Ms. Donovan, I may not have pronounced your name correctly. Thank you. The district court failed after accepting Butler's rule of the agreement to impose a sentence in accordance with the terms of the agreement by imposing sentence penalties in addition to an excess of the terms of the agreed to sentence delineated in Butler's plea agreement, specifically a five-year period of ineligibility for federal benefits under 21 U.S.C. section 862B and five special conditions of supervised release. I thought your client had conceded on a couple of occasions, or actually the word should be acknowledged, that she might have to forfeit her federal benefits. In other words, it didn't come as a surprise she was expecting that. Well, Your Honor, if you're referring to the guilty plea hearing, I believe that the colloquy requires certain things be stated in related documents, even though there is an 11C1C agreement. That wasn't my question. My question was whether on one or more occasions she acknowledged that she might have to give up her federal benefits. Might. Yes, Your Honor. The first issue presented is whether the district court constructively rejected Butler's binding plea agreement in total by imposing greater than agreed to penalties, which rendered the plea agreement unenforceable. In United States v. South, the district court imposed a sentence greater than the sentence agreed to by the parties in Self's binding 11C1C plea agreement. On plain error review, this court held that Self's plea agreement was not enforceable because by imposing a sentence not agreed to by the parties, the district court constructively rejected the plea agreement in total. There is no provision in the rules allowing a court to modify the terms of an 11C1C plea agreement. Plea agreements are contractual in nature. They bind the parties, and once accepted, binds the court. When a contract is unambiguous, the court will generally not look beyond the four corners of the document. Paragraph 4 of Butler's plea agreement unambiguously sets forth Butler's agreed-to sentence, which did not include a period of ineligibility for federal benefits or five special conditions of supervised release. When one or more penalties of a sentence are expressly included in a binding 11C1C plea agreement, other penalties are excluded. Moreover, paragraph 13 of Butler's plea agreement sets forth that the written agreement is a complete statement of the parties' agreement and no other promises have been made or implied. The court in Silva de Hoyas applied an element-based analysis in determining that neither of Silva's offenses of conviction came within the definitions of distribute or deliver provided under section 862A because 862A requires actual distribution, and the essential elements of Silva's offenses of conviction did not require actual distribution. Likewise, section 862B applies to offenses involving actual possession of controlled substance. Because Butler's offense of conviction does not require actual possession, the district court was without statutory authority to impose a period of ineligibility for federal benefits. The district court's error in imposing such a five-year period of ineligibility for federal benefits without statutory authority affected Butler's substantial rights because, unlike Silva, here Butler identifies a federal benefit for which she is or might be eligible to receive within the period of ineligibility. That is a second-chance Pell Grant, now codified under the FAFSA Simplification Act as part of the Consolidated Appropriations Act of 2021. The district court's error seriously affects the fairness, integrity, and or public reputation of judicial proceedings where the district court imposed a sentencing penalty not agreed to by the parties and without statutory authority, and which error was and continues to be routine. In United States v. Diggles, the court distinguished between discretionary and non-discretionary conditions of supervised release, finding that the special conditions of supervised release imposed by the district court in Diggles were not required, not mandatory. Therefore, the district court was obligated to pronounce such special conditions of sentencing. The court found that reference to a document that contained that satisfied that standard. However, this case is important here because the court distinguished non-mandatory and mandatory conditions such that, as applied to here where Butler's plea agreement was silent as to any conditions of supervised release, it's reasonable to infer that she agreed to standard mandatory conditions. And like Diggles, anything further should be addressed in the plea agreement. And here where the plea agreement is silent as to special conditions of supervised release, a sentence including the same, is a violation of the plea agreement and essentially is a rejection of the plea agreement. The government conceives that Butler is or might be eligible to receive a second chance Pell Grant, but wants this court to expand its holding in silver to include that Butler shows she would seek and would receive a federal benefit before finding plain error. How could Butler show that she would apply for and would receive a Pell Grant? It's rather a circular argument. Moreover, wouldn't that standard defeat the purpose of the second chance Pell Grant program? The government also concedes that Butler's appeal waiver reserved to Butler the right to bring this appeal. Citing Williams, the government wants this court to step outside the plain language of the agreed to sentence and infer the intent of the parties. The government's reasoning is flawed because the plain language is unambiguous and including terms of the sentence and excluding others. Looking beyond, the unambiguous four corners of the plain language contained in the written plea agreement contravenes standards of contract interpretation. With respect to the government statement that that the parties included that Butler would not receive a fine. Well, a term of imprisonment, supervised release, conditions of supervised release and excuse me, a term of supervised release and a fine. Those penalties are contained within the statute of conviction. Federal benefits, the denial of federal benefits is not. Thank you. Thank you. Mr. Day. Thank you, Your Honors and may it please the court. I just want to pick up on the question that was asked of opposing counsel. I want to make the point first that the course of behavior of the appellant after entering into the plea agreement confirms our position that she was aware and understood that the denial of federal benefits was on the table, so to speak. The initial pre-sentencing report talks about the plea agreement but then goes on to say the district court could deny the eligibility of the appellant for federal benefits. The probation officer also included in that initial PSR proposed conditions of supervised release. The appellant in writing informed the court that she did not object to this initial PSR. The final PSR included those same provisions. The appellant again did not object. At the sentencing hearing, the appellant was asked if she had read the PSR, whether counsel had fully explained the PSR, and whether the appellant fully understood the PSR. The appellant or counsel said yes each time. The appellant was also offered any opportunity to make comments, additions, or corrections. She made none. Thus, there was multiple opportunities at which the appellant had the opportunity to suggest that the denial of federal benefits was not on the table, so to speak. I believe she also signed a form acknowledging, quote, I may have to forfeit any federal benefits I am now receiving. So I think to answer the question that was asked earlier, the appellant was aware that the denial of federal benefits was possible. But I'd like to go on to make my initial point, rather, which is that in her brief, opposing counsel makes much of what she refers to as the four corners of the plea agreement. I think it's notable, therefore, that she does not limit her argument to the four corners when it comes to the waiver provision because, as the United States points out in its brief, the defendant has waived her 862B statutory interpretation argument. Although paragraph 9 of the plea agreement does reserve to the appellant the right to appeal the failure of the district court to impose a sentence in accordance with the agreement, that is not the same thing as challenging the district court's statutory interpretation. These are two distinct issues. The first requires this court to review the provisions of the plea agreement and compare them with what the district court did and determine what, if any, legally relevant differences exist between them. And the United States acknowledges that the plea agreement reserved the right of the appellant to question whether or not the plea agreement and the sentence matched up. The second question, however, and the question appellant argues here, requires the court to engage in statutory analysis and presents a legal question. Can a court order the denial of federal benefits pursuant to section 862B when the underlying crime was conspiracy? This second question does not involve whether the district court imposed a sentence in accordance with the plea agreement. We could easily imagine a case in which this court considered that legal question totally absent the question of whether a plea agreement had been entered. So I think as a result of that, the appellant is barred by the general waiver provision of that plea agreement, and this court should not take up that statutory question. Nonetheless, if this court does decide to take up that question, both parties agree that the question is before this court for plain error. At its core, the question is whether consisting of and involving should be read as requiring the same thing, actual distribution in the case of 862A and actual possession in the case of 862B. In Silva, this court did hold that consisting of in 862A meant actual distribution. But the appellant does not explain why in successive provisions of the same section of a statute, two different phrases should convey the same idea, and even if they do, why it would be plain error for the district court to have decided otherwise. If the two phrases captured the same principle, it would stand to reason that they would be drafted identically. 862A would read as it does, consisting of the distribution, and then 862B would read consisting of the possession. If such was the case, the United States acknowledges that Silva would apply here. But of course this is not how this section was drafted. The best explanation for this, one that gives substance to the different terms used in the statute, is that involving should be read more broadly than consisting of. In the opposing counsel's brief, she places great emphasis on shular as defining what involving to mean, quote, necessarily require. I think that emphasis is misplaced in this case. As an initial matter, the Supreme Court was not faced with the question here, what if a statute uses consisting of in one subsection and involving in another? But more importantly, I don't know that it's entirely accurate to say that the court defined involve in shular, rather that as the opinion states, the parties agreed that for that case, involve would mean, quote, necessarily requiring. Thus, there was no dispute in that forum as to what the word involve meant. And, of course, we are dealing with a section of the United States Code, the Appearance of Criminal Act, and not in this case the denial of federal benefits. Counsel, I thought I understood counsel opposite to be arguing that what we have here is conspiracy to possess and that an actual possession is required. That's right. That is opposing counsel's argument. Why isn't that correct? Well, I think that the word involving, as this court had defined it prior to shular, to be fair in interpreting the Armed Career Criminal Act, meant it to be, quote, offenses that are related to or connected with such conduct. Under that definition of the word involving, I think conspiracy would certainly fit the bill. And as I was saying, to further the point, Your Honor, in United States v. Wimbush, which this court again cited to imprentice, relying on a Second Circuit decision, this court defined involving to encompass, quote, offenses that are related to or connected with such conduct. Now, it's fair to say that post shular, that definition is not likely valid insofar as the Armed Career Criminal Act is concerned. But it does nonetheless demonstrate a non-plainly erroneous definition of the word and one that would give different meaning to the phrases involving and consisting of. Again, at the time the district court imposed its sentence, the operative definition in this circuit of involving was related to or connected with such conduct. But that's not the standard. The Supreme Court has held that you look at the definition as of the time of the appeal, not the sentencing. That's right. You are correct, Your Honor. And with respect to the Armed Career Criminal Act, that is true. That, again, the United States concedes that for that purpose of that statute, the word involving is much more narrow. But I only bring that up to emphasize that at the time that the district court was making that argument, the idea that involving could mean related to or connected with such conduct would not be either plainly erroneous or, unfortunately, this Court was laboring under the same error. Ultimately, however, I don't think it's necessary that the Court reach the same conclusion that the United States advances here. Instead, this Court can simply find that because of the differences between the two provisions, 862B does not unambiguously reach only actual possession. And as a result, the district court did not plainly err when it denied the appellant federal benefits. This court could leave for another day and a better vehicle the ultimate statutory interpretation question that appellant raises. I'd like to turn then to if this Court nonetheless does conclude that first that the waiver provision is not binding and that the district court plainly erred, at least with respect to the first three prongs, that is not, of course, the end of the analysis at hand. The appellant cannot show that the plain error, assuming there is one, seriously affected the fairness, integrity, or public reputation of the proceedings. The appellant's argument on this point is simply to identify a federal benefit and claim that because in the abstract she is eligible for such a benefit, being denied this benefit means she has satisfied this fourth prong. Notably, it is not until opposing counsel's reply brief after the United States has drawn attention to the absence of any argument suggesting Butler has any intention of applying for a Pell Grant that appellant makes any reference to her personal circumstances. In the opening brief, the existence of Pell Grant is presented as a theoretical concept, as if the existence alone of the Pell Grants is sufficient to meet this fourth prong. And even her reply brief, appellant carefully does not suggest even an amorphous intent on behalf of the appellant to apply for a Pell Grant. It is almost as if— So would it not she be eligible for a Pell Grant? Excuse me.  Would she be eligible for a Pell Grant? I will take the representations of opposing counsel that yes, that she would in the abstract be eligible to apply for Pell Grants. I think, however, with all due respect, it appears that in this case a simple survey was made of the entire universe of potential federal benefits for which appellant could apply and Pell Grants were identified and are being argued here. Again, there is no record evidence, no statement in either of the appellant's brief that the appellant has any even amorphous intent to actually apply for Pell Grants. And I want to turn back again to the fact that setting aside the statutory interpretation here, the district court did not impose a sentence that was outside the plea agreement. The record is clear here that the appellant received the benefit of a bargain. The parties agreed that appellant would plead guilty to count one and the United States would dismiss count two. That is what happened. The parties agreed to a term of imprisonment of 144 months. This was the term the appellant received. The parties agreed to a special assessment of $100. This was the assessment that the appellant received. The parties agreed to a five-year term of supervised release. This was the term of the supervised release. The parties also agreed, importantly, that the appellant will not pay a fine. The appellant was not ordered to pay a fine. The issue between the parties is what to make of the silence in the plea agreement on the subject of federal benefits and the conditions of supervised release. 862 confers upon the district court the discretion to deny federal benefits, and the plea agreement is silent with respect to such benefits. The United States suggests that this silence means that discretion was retained where it initially began with the district court. The appellant suggests that the silence means the district court was deprived of that discretion. Importantly, the plea agreement is not silent with respect to another term, where the district court has discretion. Paragraph 4 of the plea agreement expressly states that no fine will be imposed. Thus, were the parties intended to cabin the discretion of the district court, they did so. Like all contracts, the terms of the contracts of this plea agreement should be read together. Thus, paragraphs 3 and 4 should be read together. Paragraph 3 outlines what the maximum sentence of the district court could impose and, quote, includes a number of provisions. Paragraph 4 responds with what the parties have agreed to. At no point in the plea agreement does the agreement attend to limit the discretion on terms not referenced in those paragraphs. To the contrary, paragraph 13 of the agreement expressly denies that there are any other promises made or implied between the parties. And as I pointed out earlier, the course of the behavior of the appellant after entering into the plea agreement confirms our position. And again, I don't mean to dwell again on this, but even if there were plain error with respect to the denial of federal benefits, there was no plain error that seriously affected the fairness, integrity, or public reputation of these proceedings. Lastly, I'd like to touch on the conditions of supervised release. I don't know that much needs to be said of those conditions because, frankly, not much of anything is said about what those actual conditions are in appellant's brief. The conditions of the release require the appellant to give her probation officer access to financial information for the purpose of monitoring her employment. The appellant is prohibited from consuming alcohol. The appellant is also required to participate and pay for testing and treatment for alcohol and drug abuse and undergo mental health treatment. The appellant is pled guilty to conspiracy to possess with intent to distribute methamphetamines after two previous convictions in state court for possessing controlled substances. I don't think it seriously affects the fairness, integrity, or public reputation of these proceedings, given the appellant's history for those conditions to be imposed upon her during a supervised release. With no further questions, I'll rest your honors. Thank you. Thank you, counsel. Butler concedes that she was admonished that she might be subject to special conditions of supervised release and a period of ineligibility for federal benefits. Paragraph 13, though, of the plea agreement says, the defendant, the defendant's attorney, and the government acknowledge that this agreement is a complete statement of the party's agreement in this case. It supersedes all other plea agreements and may not be modified unless the modification is in writing and signed by the parties. Those admonishments were not signed by the parties. A court may not accept a plea agreement and modify its terms on a piecemeal basis, a line-item veto. And in Silva, this court applied an element-based analysis and determined that Silva's offenses of conviction did not require actual distribution. None of the elements required that. Likewise, Butler's offense of conviction, conspiracy to possess with intent to distribute a controlled substance, doesn't require actual possession. In Shuler, the Supreme Court made clear that possession is actual possession, not constructive. Here, the district court imposed an illegal sentence. And as the record shows, or as in the brief I pointed out, that it's an ongoing error in conspiracy cases. That certainly jeopardizes the reputation of judicial proceedings. Considering the foregoing, Butler requests that the court vacate and remand her conviction and sentence and remand to a different district judge. Thank you.